Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000517
21-MAR-2017
07:57 AM

NO. CAAP-14-0000517

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
MICHAEL L. ARKIN, Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
(CASE NO. 3DTC-13-02654)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, and Fujise and Leonard, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Michael Louis Arkin (Arkin) with operating a vehicle under the influence of an intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1) and/or (a)(3) (2007).[1] After a bench trial, the District Court of the

---

[1] HRS § 291E-61(a)(1) and (3) provide:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

. . . [or]

(3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]

Third Circuit (District Court)[2/] found Arkin guilty of OVUII under HRS § 291E-61(a)(1), but not guilty of the HRS § 291E-61(a)(3) means of committing OVUII.

Arkin appeals from the Judgment entered by the District Court on February 4, 2014. On appeal, Arkin contends that the District Court: (1) plainly erred in admitting the testimony of Officer Paula Jelsma (Officer Jelsma) regarding the results of the Horizontal Gaze Nystagmus (HGN) test she administered to Arkin; (2) clearly erred in interpreting Officer Jelsma's testimony about how she would conduct the walk-and-turn test if the area was sloped, which Arkin claims invalidated the District Court's reliance on Officer Jelsma's testimony about Arkin's poor performance on this test; and (3) plainly erred in admitting Officer Jelsma's testimony that Arkin performed poorly on the one-leg-stand test and erred in relying on this testimony.

The State concedes error regarding the admission of the HGN test results and further concedes that there is insufficient evidence to sustain Arkin's conviction, even though Arkin did not raise sufficiency of the evidence as a point of error. As explained below, we conclude that the State's concession of error regarding the HGN test results and its concession that there is insufficient evidence to sustain Arkin's conviction are misguided, and we reject these concessions. See State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000) ("[E]ven when the prosecutor concedes error, before a conviction is reversed, it is incumbent on the appellate court first to ascertain that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial." (internal quotation marks, citation, brackets, and ellipsis points omitted)). We further conclude that Arkin's arguments on appeal are without merit, and we affirm the District Court's Judgment.

---

[2/] The Honorable Andrew P. Wilson presided.

I.

At 11:15 p.m., Officer Jelsma pulled over Arkin's pickup truck because his right headlight was out. Upon approaching Arkin, Officer Jelsma smelled "an odor of intoxicating liquor coming from his breath[,]" and she observed that his eyes were red, his speech was "kinda slurred[,]" and he appeared "kinda sleepy" or "drowsy." When Arkin exited the truck to look at his headlight, Officer Jelsma smelled "a strong odor of liquor coming from him." She also noticed that Arkin was "slightly unbalanced on his feet[,]" was walking very deliberately, and was holding onto his truck.

Officer Jelsma conducted field sobriety tests on Arkin consisting of the HGN test, the walk-and-turn test, and the one-leg stand test. On the HGN test, Officer Jelsma observed six out of the six possible clues, with more clues signifying a greater likelihood of impairment. On the walk-and-turn test, Arkin had difficulty maintaining his balance and stepped off the line during the instructional phase, and he had to raise his arms to keep his balance and repeatedly stepped off the line while performing the test. On the one-leg-stand test, Arkin had a "hard time" balancing on one leg, had to put the foot he raised back on the ground to keep his balanced after two seconds, and raised his arms to keep his balance after being instructed to keep them by his sides. Officer Jelsma was familiar with the appearance of people who consume alcohol, and it was her opinion that Arkin was under the influence of alcohol.

Officer Jelsma placed Arkin under arrest. At the police station, Arkin took a breath test by blowing into the "Intoxilyzer 5000." The breath test showed a breath alcohol concentration of .104 grams of alcohol per 210 liters of breath.

Arkin testified that he had prior injuries that affect his ability to perform field sobriety tests, but did not disclose this to Officer Jelsma because "she never asked." Arkin admitted that prior to being stopped by Officer Jelsma, he had been

drinking beer.  He said that he drank "two tall Heineken[s]" that were twenty-two ounces each, whereas a normal beer is twelve ounces.

The District Court found that based on Officer Jelsma's testimony, which the District Court found was credible ("I was impressed with her credibility"), and Arkin's admission that he had consumed forty-four ounces of Heinekin beer before being stopped, the State had shown a violation of HRS § 291E-61(a)(1). The District Court found that because the State failed to show that the "Intoxilyzer 5000" which Officer Jelsma referred to in her testimony was the same as the "Intoxilyzer 5000-EN" that produced Arkin's breath test result, it would not find Arkin guilty of violating HRS § 291E-61(a)(3).

II.

We resolve the arguments Arkin raises on appeal as follows:

A.

Arkin contends that the District Court plainly erred in admitting Officer Jelsma's testimony about the results of the HGN test she administered to Arkin because the State failed to lay a sufficient foundation for such testimony.  However, Arkin did not raise any objection to Officer Jelsma's HGN testimony at trial, much less an objection based on lack of foundation.  Accordingly, Arkin waived the right to challenge this testimony on appeal. See State v. Wallace, 80 Hawai‘i 382, 410, 910 P.2d 695, 723 (1996) (concluding that the defendant's challenge to testimony based on lack of foundation was waived for failure to object at trial on this basis); State v. Samuel, 74 Haw. 141, 147, 838 P.2d 1374, 1378 (1992) ("The general rule is that evidence to which no objection has been made may properly be considered by the trier of fact and its admission will not constitute grounds for reversal."); State v. Kassebeer, 118 Hawai‘i 493, 505, 193 P.3d 409, 421 (2008) (holding that the defendant waived the right to

4

challenge testimony relating to a handgun due to his failure to object).[3]

### B.

Arkin contends that the District Court clearly erred in interpreting Officer Jelsma's testimony about how she would conduct the walk-and-turn test if the area was sloped, which Arkin claims invalidated the District Court's reliance on Officer Jelsma's testimony about Arkin's poor performance on this test. This point of error concerns Arkin's theory at trial that the walk-and-turn test was conducted on an area that was sloped and therefore Officer Jelsma's observation of Arkin's poor performance was not a valid indication of whether Arkin was impaired.

Officer Jelsma testified at trial that she looks for the flattest, least sloped area to conduct the walk-and-turn test, and that if there is a side-to-side slope, she would have the person walk straight up the slope, so it would be even on both sides and easier for the person to keep his or her balance. Arkin testified and presented evidence, including photographs, to support his contention that the line where he performed the walk-and-turn test had a "combined slope," that is, both a slope in the direction he was walking and a slope side-to-side, perpendicular to the direction he was walking. The State questioned the accuracy of Arkin's slope measurements, and Officer Jelsma did not confirm that she conducted the walk-and-turn test on the line depicted in the photographs, but only stated that the line depicted could have been, or possibly was, the line where the test was conducted.

In any event, the record shows that Arkin's evidence regarding the "combined slope" was presented and argued to the District Court, and that the District Court considered this

---

[3] The Hawai'i Supreme Court has held that a non-specific "lack of foundation" objection does not preserve the issue for appeal unless, based on the context, it is evident what the objection was meant to convey. State v. Long, 98 Hawai'i 348, 353-54, 48 P.3d 595, 600-01 (2002). Here, Arkin failed to even assert a general "lack of foundation" objection to Officer Jelsma's HGN testimony.

evidence along with other evidence relating to the walk-and-turn test in rendering its verdict.  In essence, Arkin challenges the District Court's assessment of the credibility of the witnesses and the weight of the evidence regarding the walk-and-turn test.  However, these determinations are the province of the District Court as the trier of fact, and we decline to second-guess the District Court's evaluation of the walk-and-turn evidence.  See State v. Buch, 83 Hawaiʻi 308, 321, 926 P.2d 599, 612 (1996) ("[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the [trier of fact]." (internal quotation marks and citation omitted)).  We conclude that this point of error is without merit.

C.

We reject Arkin's claim that the District Court plainly erred in admitting Officer Jelsma's testimony that Arkin performed poorly on the one-leg-stand test and erred in relying on this testimony.  Arkin did not object to this testimony at trial, and it was within the province of the District Court to evaluate the credibility of and to determine what weight to give this testimony.  See Samuel, 74 Haw. at 147, 838 P.2d at 1378; Buch, 83 Hawaiʻi at 321, 926 P.2d at 612.

III.

Based on the foregoing, we affirm the District Court's Judgment.

DATED:    Honolulu, Hawaiʻi, March 21, 2017.

On the briefs:

Phyllis J. Hironaka
Deputy Public Defender
for Defendant-Appellant.

Jason R. Kwiat
Deputy Prosecuting Attorney
County of Hawaiʻi
for Plaintiff-Appellee.

*Craig H. Nakamura*

Chief Judge

Associate Judge

Associate Judge